IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GERALD L. BALL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:16cv105 |
| | ) |
| NANCY A. BERRYHILL[1], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Gerald L. Ball ("Ball") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Ball alleges that the Administrative Law Judge ("ALJ") erred by improperly assessing Ball's mental impairments and credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Ball's Motion for Summary Judgment (Dkt. No.14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Ball failed to demonstrate that he was disabled

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Ball protectively filed for SSI on June 25, 2014, claiming that his disability began on January 15, 2012 due to anxiety disorder, bipolar disorder, lower back pain, headaches, pain in his neck and shoulders, numbness in his right hand, inability to straighten his fingers, hearing problems, poor vision, depression, panic attacks, difficulty being around others and paranoia. R. 211–19, 227–29, 248. The state agency denied Ball's applications at the initial and reconsideration levels of review. R. 95–110, 112–126. On September 10, 2015, ALJ Stephen A. DeMonbreum held a hearing to consider Ball's claims for SSI. R. 33–80. Counsel represented Ball at the hearing, which included testimony from vocational expert ("VE") Asheley Wells.

On September 22, 2015, the ALJ entered his decision analyzing Ball's claim under the familiar five-step process[3] and denying his claim for benefits. R. 12–28. The ALJ found that Ball

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant

2

suffered from the severe impairments of degenerative disc disease, chronic obstructive pulmonary disease, peripheral neuropathy, osteoarthritis, hypertension, obesity, dysfunction of joints, affective disorder, anxiety-related disorder, schizophrenia/psychotic disorder, personality disorder, and substance use disorder. R. 14.  The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15.

The ALJ found that Ball retained the RFC to perform a range of light work such that he can lift and/or carry, including upward pulling, up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk, with normal breaks, for a total of 6 hours in a 8-hour workday; sit, with normal breaks, for a total of 6 hours in an 8-hour workday; and can frequently reach in all directions and finger with the right upper extremity. The ALJ limited Ball in the RFC finding such that he can never crawl or climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, balance kneel, crouch, stoop or bend and that he should have no more than occasional exposure to extreme cold, vibrations, hazards, dust, fumes, odors, chemicals, gases, and the like. The ALJ determined that Ball can perform simple, easy to learn, repetitive unskilled work activity, that he should not interact with the public, and that he should only have occasional interaction with co-workers and supervisors. R. 17.

The ALJ found that Ball could perform jobs that exist in significant numbers in the national economy, such as assembler, packing line worker, and garment folder. R. 27.  Thus, the ALJ concluded that Ball was not disabled. R. 28.  The Appeals Council denied Ball's request for review on January 15, 2016, and this appeal followed. R. 1–3.

---

disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

**A. Medical History**

The extensive medical record shows that Ball has had a lengthy struggle with mental health and substance abuse problems. Nevertheless, there are no medical records showing that Ball received any treatment for his alleged mental health or physical impairments during the relevant time period of June 25, 2014, his application date, through September 22, 2015, when the ALJ reached his decision.[4] In terms of treatment preceding the relevant time period, Ball was seen on August 5, 2011 at Franklin Memorial Hospital complaining of thoughts of self-harm and he was found positive for depression. R. 381. On September 21, 2011, Ball was seen at Bedford Memorial Hospital after being brought there by police when family members became concerned about his mental state. He was positive for depression and substance abuse. R. 293–94.

On January 17, 2012, Ball was again seen at Bedford Memorial Hospital under custody of law enforcement for a blood alcohol draw following a motor vehicle accident. R. 307–08. Ball was the driver and he reported he was driving 50 miles per hour when he lost control and ran into a tree. R. 327. Ball received x-rays following the accident on February 7, 2012, which found no fracture on his elbow, degenerative disc disease at C6-C7 on his spine but no definite fracture, and no traumatic abnormality on his left shoulder. R. 329–31. The overall impression was that Ball had neck and back pain and a subtle right upper chest lesion, but he was not prescribed any pain medication. R. 330. Specifically, Dr. Stephen Ausband, M.D., found that Ball had tenderness, no edema, tender left trapezius, tender left spine midline, and no crepitance, stepoff or deformity. R. 327. Ball had a limited range of motion due to pain in his left trapezius

---

[4] See 20 C.F.R. § 416.02 (claimant is not eligible for SSI until, among other factors, the date on which he files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he satisfies the eligibility requirements, which cannot predate the date on which an application was filed).

area, but no other musculoskeletal abnormalities. Id. As to his chest, Dr. Ausband found "vague nodular opacity projected over the right upper lobe", and as to the spine, he found "no fractures or subluxation. Moderate multilevel degenerative disc disease." R. 317.

On April 4, 2012, Ball was admitted to the Center for Behavioral Health where he was assessed with a Global Assessment of Functioning ("GAF") score of 35-45.[5] R. 350. He was placed on "alcohol detox" and denied suicidal ideations. R. 345. X-rays the following day showed his lungs were free of abnormalities and there was no evidence of acute pulmonary disease. R. 345. Ball was discharged on April 6, 2012 with the diagnoses of alcohol dependence, polysubstance dependence, rule out malingering substance-induced mood disorder, and anxiety disorder. R. 346. His GAF was 55-60, which corresponds to moderate symptoms.

On August 9, 2012, Ball's primary care physician, Dr. George Wagner, M.D., determined Ball had low back pain, depression, PTSD and radiculitis. R. 493. A lumbar MRI conducted on August 22, 2012 found areas of "potential clinical significance" in the L3-L4 through L5-S1 levels. R. 375. Ball continued to report back pain and complain of depression, anxiety and substance abuse throughout the fall of 2012, and both Tamara Baldwin, FPMHNP-BC, and Dr. Wagner assessed Ball with mood disorder. R. 488, R. 486, R. 481, R. 395–96. On October 13, 2012, Dr. Kimberly Abel, M.D., at Franklin Memorial Hospital, gave a final impression that Ball suffered from chronic back pain. R. 397.

Ball was admitted to Carilion Roanoke Memorial Hospital Adult Inpatient Service Rehabilitation Center on January 30, 2013 where his urine screens were positive for various

---

[5] A GAF score of 31-40 denotes some impairment in reality testing or communication or major impairments in several areas. A score of 55-60 indicates moderate symptoms, such as a flat affect and occasional panic attacks or moderate difficulty in social, occupational or school functioning. The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev.2000) (DSM IV), with 100 being the most high-functioning.

drugs. R. 419, R. 429. Upon discharge on February 1, 2013, Ball was stable with fair insight in to his presentation and a GAF score of 45, which corresponds to serious symptoms. R. 423.

In March of 2013, Ball continued to be assessed with back pain and mood disorder. R. 480, R. 478. In June and July of 2013, Ball was seen at New Horizons Healthcare and diagnosed with back pain, mood disorder, radiculitis, drug abuse, and depression. R. 507, R. 505.

Jason Meador, PA, with New Horizons saw him again on September 5, 2013 for a follow-up appointment and noted Ball's Lyrica had not arrived yet and that Ball was currently taking Klonopin two times a day. R. 502. Mr. Meador's plan was to start Ball on Norco for low back pain, to refill Xanax for the mood disorder, and to stop Tramadol. R. 503.

On November 6, 2014, Dr. Marvin Gardner, Ph.D., conducted a psychological consultative examination and diagnosed Ball with opioid use disorder in reported early remission; alcohol use disorder at a moderate level; unspecified schizophrenia and other psychotic disorder, mild; unspecified depressive disorder, moderate; unspecified anxiety disorder, moderate; and other specified personality disorder with cluster B traits. R. 530. Dr. Gardner noted that Ball's insight and judgment were poor and found him to have a moderate impairment of concentration, persistence or pace and a moderate impairment in social interaction with coworkers and the general public. R. 531.

In December 2014, Dr. William Humphries, M.D., conducted a physical consultative examination in which he found Ball was oriented to three spheres with normal thought content and normal memory, and diagnosed Ball with diastolic hypertension; mild chronic obstructive pulmonary disorder (COPD); chronic thoracolumbar strain with degenerative joint disease; and bilateral hand and foot degenerative joint disease. R. 535–36.

State agency psychologist Joseph Leizer, Ph.D., reviewed the medical evidence in January 2015 in connection with Ball's initial disability application. R. 101–02, R. 106–07. State agency psychologist Howard Leizer, Ph.D., reviewed the medical evidence again in connection with his request for reconsideration. R. 122–23. Both doctors indicated that Ball had mild restrictions in activities of daily living, and moderate difficulties maintaining social functioning and maintaining concentration, persistence, or pace. R. 101–02, 122–23.

**B. Mental Impairments**

Ball argues that the ALJ failed to properly address his mental impairments at Step 4, as required by Social Security Ruling ("SSR") 96-8P.[6] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Ball asserts: "Simply limiting plaintiff to simple, easy to learn work with no public interaction and only occasional interaction with co-workers and supervisors in his RFC assessment is not enough to fulfill SSR 96-8P" and that "the ALJ must discuss plaintiff's mental limitations in detail." Pl. Br. Summ. J. p. 14.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63,

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

7

2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Ball's mental limitations satisfies the requirements of SSR 96-8P. The ALJ considered both medical and non-medical evidence in assessing Ball's RFC and provided the narrative discussion required by the regulations. The ALJ discussed the history of Ball's mental symptoms and reviewed his mental health treatment, including the inpatient treatment he received in April 2012, his 2014 psychological consultative examination by Dr. Gardner, and the records review by state agency psychologists Drs. Joseph and Howard Leizer. R. 23, R. 19, R. 25. The ALJ specifically referenced Dr. Gardner's conclusions when giving his opinion some weight, stating Dr. Gardner wrote that Ball:

> [I]s able to perform simple and repetitive work tasks and to maintain regular attendance in the workplace. He is able to perform work activities on a consistent basis with likely no more than a moderate impairment of concentration, persistence or pace…He is able to complete a normal workday or workweek without interruptions resulting from his psychiatric condition when remaining abstinent from substances…His personality traits are likely to create a moderate impairment of his ability to socially interact with coworkers and with the general public. He is able to deal with the usual stresses encountered in competitive work when remaining abstinent from substances. If his psychiatric symptoms were to persist after abstinence, he would require appropriate psychiatric treatment. If adherent to such treatment, he would be able to deal with the usual stresses encountered in competitive work.

R. 25. The ALJ also gave some weight to the opinions of Drs. Joseph and Howard Leizer. R. 25. He emphasized that Dr. Joseph Leizer completed a Mental Residual Functional Capacity Assessment Form indicating that Ball can perform simple, unskilled work; complete short and simple instructions; perform work without special supervision; make simple work-related decisions; accept and follow instructions; ask simple questions; and follow simple tasks. R. 25, R. 122–23.

The ALJ also considered Ball's testimony as to his daily activities and social interaction, including that he reported feeling paranoid around people. R. 16. The ALJ noted though that at a psychological consultative examination, Ball "reported being able to do most chores, such as shopping for groceries and cooking in a microwave oven. (Exhibit 10F at 3)." R. 16. He also exhibited "eurythmic mood, appropriate affect, responsive speech, a friendly manner, good eye contact and good smile frequency" at this exam. R. 16, R. 483, R. 525–26. Significantly, the ALJ restricted Ball's RFC to no interaction with the public despite Dr. Gardner's opinion that he had only moderate limitations in his ability to socially interact. R. 531.

The ALJ considered the medical opinions, claimant's testimony, and evidence of mental impairment, and explained the basis for his ruling, thus, the court is capable of meaningfully reviewing the RFC. See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 826 F.3d at 189 (4th Cir. 2016) (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a

record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").

Ball also argues, relying on Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), that the ALJ erred by failing to address Ball's moderate difficulties regarding concentration, persistence, or pace in assessing his RFC, and failing to provide a hypothetical question to the VE that addressed these moderate difficulties. In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary.[7] Id.

However, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ accounted for Ball's

---

[7] Thus, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized recently in Monroe, where the Court of Appeals found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and "specific application" of the law to the record. See Monroe, 2016 WL 3349355, at *10 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

10

moderate impairments in concentration, persistence, and pace in both his hypothetical question to the VE and the RFC finding in his decision. The ALJ's hypothetical question and RFC assessment limited Ball to simple, easy to learn, repetitive unskilled work with no interaction with the public and occasional interaction with coworkers. R. 17, 78.

Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitation in concentration, persistence, or pace, Ball is capable of performing the basic mental demands of low-stress work with no interaction with the public and only occasional interaction with co-workers. As discussed, the ALJ emphasized that the opinions of Drs. Joseph and Howard Leizer and Gardner are consistent with Ball's treatment records, their opinions "generally indicate[] moderate limitation in social functioning and moderate limitation in concentration, persistence, or pace", and the ALJ considered Ball's failure to pursue treatment during the relevant period and his own self reports. R. 26, 16. Thus, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015). The ALJ's decision will not be disturbed.

### C. Credibility

Ball argues that the ALJ's credibility[8] findings are not supported by substantial evidence. Ball asserts that the ALJ erred when he stated Ball's activities are inconsistent with the ALJ's

---

[8] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

11

RFC, "but does not make specific findings as to how [Ball's] allegations are inconsistent." Pl. Br. Summ. J. p. 19.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Ball's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996).

In this case, the ALJ found that Ball's statements regarding the severity of his limitations were not wholly credible because they were not supported by the objective medical evidence, his treatment history, and his daily activities. R. 24–26. The ALJ's opinion includes a detailed consideration of Ball's medical history along with Ball's own allegations. After a review of Ball's treatment records and allegations of disability, the ALJ stated:

> [I] find that [Ball's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ball's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

---

Here, SSR 16–3p was issued long after the ALJ's consideration of Ball's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Ball's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

R. 21. The ALJ outlined his reasons for this determination, including that Ball's allegations regarding the severity of his limitations were not fully consistent with the evidence of record, and the fact Ball had not undergone "any treatment since the protective filing date of his application." R. 24. The ALJ specifically noted the results from Dr. Gardner's 2014 psychological evaluation, as well as the conclusions of the state agency physicians, discussed above. The ALJ also stated that although a lumbar spine MRI showed some abnormalities, Ball had a normal gait and normal sensation in his legs. R. 24, R. 388, R. 480, R. 535. The ALJ further observed that Ball had no muscle spasm, a negative straight leg-raising test, and no difficulty moving on and off the examination table during Dr. Humphries's examination. R. 24, R. 534.

Ball's argument is merely an invitation to re-weigh the evidence and conclude that Ball suffers from impairments which more severely limit his functional capacity than the RFC found by the ALJ. Ball's argument misses the review function of this court – whether substantial evidence supports the ALJ's determination. Here, the ALJ carefully and comprehensively analyzed the medical evidence. It is the ALJ's province to weigh the evidence, determine how to handle conflicting evidence, and reach a conclusion of whether Ball is disabled. The ALJ in this case fulfilled his duties and substantial evidence supports the RFC determination and the conclusions as to Ball's credibility. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

## CONCLUSION

For the reasons set forth above, I recommend that Ball's motion for summary judgment be **DENIED**, and the Commissioner's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                                      Entered:  June 30, 2017

                                      *Robert S. Ballou*

                                      Robert S. Ballou
                                      United States Magistrate Judge